**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

CHRISTOPHER CARL BARROWS,

                    Plaintiff,

vs.

CAROLYN W. COLVIN, THE
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

No. C 13-4087-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING REPORT AND
RECOMMENDATION**

_____

**TABLE OF CONTENTS**

I.     INTRODUCTION........................................................................ 2

II.    ISSUE ....................................................................................... 3

III.   FACTS AND PROCEDURAL HISTORY ............................................. 4

IV.    REPORT AND RECOMMENDATION ............................................... 7

V.     COMMISSIONER'S OBJECTIONS ................................................. 11

VI.    DISCUSSION........................................................................... 17
       A.    Standard of Review........................................................ 17
       B.    ALJ's Duty to Develop the Record Fairly and Fully ...................... 19
       C.    Nevland and its Progeny in this Judicial District........................ 20
       D.    Analysis..................................................................... 26
             1.    Medical Records ...................................................... 28
             2.    Observations of Treating Physicians and Others.................... 31
             3.    Barrows's Limitations and Capabilities ............................. 34
             4.    Other Considerations ................................................. 37

VII.   CONCLUSION ......................................................................... 41

# I.    INTRODUCTION

This case is before me on a Report and Recommendation (R & R) (docket no. 17) from Judge Leonard T. Strand, filed on July 1, 2014. In the R & R, Judge Strand recommends that the Commissioner's decision be reversed and remanded for further proceedings and that judgment be entered against the Commissioner and in favor of the plaintiff, Christopher Barrows (Barrows). Report at 26. The Commissioner timely filed objections to the R & R (docket no. 18). For the reasons discussed below, I adopt in part and reject in part the recommendations in Judge Strand's R & R.

First, I adopt Judge Strand's recommendation that I find the Administrative Law Judge (ALJ) appropriately considered and evaluated the effects of Barrows's obesity in formulating his residual functional capacity (RFC).[1] *Id.* at 11. Second, I adopt Judge Strand's recommendation that I find the ALJ provided good reasons, supported by substantial evidence, for affording the appropriate weight to certain medical and non-medical opinions—*i.e.*, Sharon Eckhart, ARNP; William Morton, Psy.D; Marlene Gernes, D.O.; and Russell Lark, Ph.D—with regard to Barrows's mental RFC. *Id.* at 19, 21. Third, I also adopt Judge Strand's finding that the "new" records Barrows cites to do not cast doubt on other opinions as to Barrows's mental health recommendation,[2]

---

[1] A claimant's RFC "is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n. 5 (8th Cir.2007)). "The [RFC] of a claimant 'is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Weber v. Barnhart*, 348 F.3d 723, 725 (8th Cir. 2003) (quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)).

[2] As noted in Judge Strand's R & R, the "new" records included Nurse Practitioner Sharon Eckhart's treatment notes and other treatment notes from 2009 and 2010 at a Mayo Clinic affiliate in Mankato, Minnesota, which indicate Barrows was seen for

and I adopt Judge Strand's recommendation finding that the ALJ's determination of Barrows's mental RFC was supported by substantial evidence in the record as a whole. *Id.* at 21. Neither party has objected to these findings by Judge Strand.[3]

Finally, I disagree with Judge Strand's R & R because of its finding that the ALJ did not fulfill his duty of developing the record for assessing Barrows's physical RFC.[4] After considering the evidence relied upon by the ALJ and the record, I find it is unnecessary for the ALJ to obtain an additional medical opinion from a treating or examining source to support its physical RFC determination. The ALJ fulfilled his duty to develop the record, and it assessed Barrows's physical RFC based on all the relevant evidence. Thus, the ALJ properly made a mental and physical RFC determination, which was supported by substantial evidence in the record, and I affirm the ALJ's decision.

## II. ISSUE

The single question presented is whether the record consists of sufficient evidence as to Barrows's physical RFC to support the ALJ's finding, even though the record does

---

depression. Report at 21 n.6. The new records do not provide substantial support for Barrows's arguments.

[3] The parties' fourteen-day window to file objections to such findings has closed. *See* FED. R. CIV. P. 72(b)(2). In the absence of any objections, a district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

[4] Judge Strand recommends that I order "[o]n remand, the ALJ must fully and fairly develop the record concerning Barrows's physical impairments. This includes obtaining an opinion from a treating or examining acceptable medical source as to his physical RFC." Report at 26.

not include an explicit opinion by a treating or examining source as to Barrows's physical work-related limitations based on his impairments.

## III.    FACTS AND PROCEDURAL HISTORY

Plaintiff Christopher Carl Barrows (Barrows) filed a Title II application for Social Security Disability (DIB) and a Title XVI application for Supplemental Security Income benefits (SSI) on March 7, 2011.  Tr. 12.  The record provides that Barrows alleges disability beginning on March 18, 2009.[5]  In his disability report, Barrows claimed to be disabled because of the following impairments: bipolar disorder; degenerative disc disease; sleep apnea; and ADD.  Tr. 284.  He previously worked as a welder, meat packing worker, and construction worker.[6]  Tr. 17, 36.

After Barrows's claims were denied initially and on reconsideration, he requested a hearing before an ALJ.  On June 12, 2012, there was an administrative hearing, following which ALJ Robert Maxwell issued a decision finding Barrows was not disabled since the alleged onset date.  Tr. 23.  Barrows's request for review by the Appeals Council was denied on August 6, 2013.  Tr. 1–3.  Thus, the ALJ's decision became the final decision of the Commissioner.  Tr. 1, 9; *see also* 20 C.F.R. § 416.1481.  On

---

[5] Judge Strand's R & R provides: "[Barrows] protectively filed for DIB and SSI on March 7, 2011, alleging disability beginning on March 14, 2009."  Report at 1.  In Barrows's brief, he recognizes that *res judicata* would preclude reopening the March 17, 2009, decision of the ALJ finding Barrows *not* disabled.  Plaintiff's Brief at 1.  Thus, Barrows alleges that he became disabled as of March 18, 2009, the day after the denial of his previous application for disability benefits by ALJ Leonard A. Nelson.  Tr. 89.

[6] Barrows attempted to work as a welder during the alleged disability period, but he claimed that it "didn't work out" because he was unable to perform the physical requirements of the job, such as "the lifting, bending, and squatting," and he "felt like everybody was watching [him] all the time."  Tr. 17, 40.

September 11, 2013, Barrows commenced this action in federal district court and objected to the ALJ's decision on four bases.[7]

To determine whether Barrows was disabled, the ALJ applied the five-step evaluation set forth in the Code of Federal Regulations (C.F.R.) to determine disability in social security proceedings.[8]  *See* Tr. 13–14; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); 20 C.F.R. § 416.920(a)(4)).  Applying that five-step test, the ALJ determined the following: (1) Barrows has not engaged in substantial gainful activity since March 14, 2009; (2) Barrows has the following severe

---

[7] Barrows raised four objections, contending that the ALJ's decision to deny Barrows benefits was not supported by substantial evidence: (1) the ALJ erred by not evaluating obesity and the effects of obesity in relation to other impairments and residual functional capacity; (2) the ALJ erred by giving controlling weight to non-examining, non-treating medical opinions based on old stale evidence; (3) the ALJ erred by giving little or no weight to the treating source's expert medical opinions without giving good reasons; (4) there is not substantial evidence in this record to support the ALJ's denial of benefits, and the record overwhelmingly demonstrates that plaintiff is disabled.  *See* Plaintiff's Brief at 4–5.  "Because the second and third arguments are related," Judge Strand analyzed the arguments together.  Record at 8.  As alluded to above, Judge Strand found the plaintiff's first three contentions unpersuasive.  However, although Judge Strand concluded that the ALJ's determination regarding Barrows's mental RFC is supported by substantial evidence in the record as a whole, he held that substantial evidence does not support the ALJ's conclusion that Barrows retains a physical RFC sufficient to do other work available in the national economy.  Report at 21, 25.

[8] The five steps include whether: (1) the claimant conducts work for substantial gain; (2) the claimant has a severe impairment; (3) the impairment equals or exceeds a listed impairment; (4) the claimant can perform his past relevant work; and (5) there exist other jobs in substantial numbers available for a person of the claimant's limitations.  *See* Tr. 13–14; *Snead v. Barnhart*, 360 F.3d 834, 836 n.2 (8th Cir. 2004).  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

impairments: "degenerative disc disease of the lumbar spine," "obesity," and "major depressive disorder"; (3) Barrows's impairments do *not* meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Barrows is not capable of performing past relevant work; (5) Barrows can perform other jobs that exist in the national economy. *See* Tr. 14–23. The ALJ then held that Barrows was not disabled from his alleged onset date through the date of the ALJ's decision. Tr. 23. Thus, it is undisputed that the ALJ's evaluation proceeded to Step Five.

Barrows had the burden of production and persuasion from Steps One through Four, but when the ALJ's evaluation proceeded to Step Five, the burden of production, not persuasion, shifted to the Commissioner. *Hattig v. Colvin*, No. C. 12–4092, 2013 WL 6511866, *9 (N.D. Iowa Dec. 12, 2013) (citing *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) ("The Commissioner recently promulgated a new rule designed to clarify that although a burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant." (citing 68 Fed.Reg. 51153, 51155 (Aug. 26, 2003))). "At Step 5, the Commissioner's burden is twofold: 'The Commissioner must [ ] prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Id.* (citing *Eichelberger*, 390 F.3d at 591). If an individual is able to perform "other" work, then that person is not "disabled." *See* 20 C.F.R. § 416.920(a)(4)(v).

"The 'key issue' on the question of whether the Commissioner met his burden at the fifth step of the analysis in this case, as in *Nevland*, is the Commissioner's proof on

the first requirement, the claimant's residual functional capacity."[9] *Scott v. Apfel*, 89 F.Supp.2d 1066, 1073 (N.D. Iowa 2000) (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000)). One of Barrows's claims of error related to the ALJ's Step Five determination, and agreeing with Barrows, Judge Strand held that the ALJ erroneously established Barrows's physical RFC in the absence of an opinion from a treating or examining source as to Barrows's work-related limitations. Report at 25–26. The gravamen of the Commissioner's objections to Judge Strand's R & R is that the ALJ did *not* err in making a physical RFC determination. I turn to analyze more closely Judge Strand's R & R and the Commissioner's objections.

## IV. REPORT AND RECOMMENDATION

In reaching his recommendation to reverse and remand the Commissioner's decision, Judge Strand finds that the Commissioner only relied on medical opinions submitted by state agency consultants as to Barrows's physical RFC. Those consultants

---

[9] The ALJ determined that Barrows had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Barrows] can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, crouch, stoop, crawl, and kneel; [Barrows] should avoid concentrated exposure to extreme cold; he should avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery; the claimant is limited to work requiring the performance of simple, and some, but not all detailed tasks; his work requirements must be routine in nature, and cannot include frequent changes in the work setting.

Tr. 16–17.

"reviewed records but never treated or examined Barrows." Report at 21. For example, the Commissioner relied on the opinions of Dr. Marlene Gernes and Dr. John May. *Id.* at 21–22. Judge Strand asserts that the ALJ's reliance on such opinions, *i.e.*, opinions of non-treating and non-examining sources, "raises a serious issue as to whether the ALJ fully and fairly developed the record concerning Barrows's physical RFC." *Id.* Judge Strand's R & R continues: "I find that he did not." *Id.*

To bolster his finding that the ALJ did not fully and fairly develop the record as to Barrows's physical RFC, Judge Strand likens this case to *Nevland*, 204 F.3d 853. *Id.* at 22. Judge Strand asserts that, in *Nevland*, like this case, the Commissioner determined that, although the claimant could not perform past work, the claimant could perform various jobs identified by a VE. *Id.* At Step Five of its analysis, the ALJ in *Nevland* relied on non-treating and non-examining physicians who reviewed the claimant's records and formed opinions about the claimant's RFC based on those records, which also influenced the ALJ's formulation of hypothetical questions to the VE. *Id.*

In reviewing the Commissioner's decision in *Nevland*, the Eighth Circuit Court of Appeals held that "the ALJ should have sought [an examining opinion] from [the claimant's] treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [the claimant's] mental and physical residual functional capacity." *Id.* at 22–23 (quoting *Nevland*, 204 F.3d at 858). After quoting from *Nevland*, Judge Strand points out that, contrary to the Commissioner's arguments, "*Nevland* remains good law." *Id.* at 23. Additionally, Judge Strand stated, "[I]t has been the law in this Circuit for at least fourteen years that the Commissioner 'ordinarily' cannot meet her burden of production at Step Five without an opinion from at least one doctor who actually examined the claimant." *Id.*

Citing to *Hattig*, 2013 WL 6511866, *11, Judge Strand recognizes that "other medical evidence of record" (aside from a medical opinion from a treating or examining

doctor) "might fill the gap by clearly establishing a claimant's RFC to do other work, and to function in the workplace." Report at 23. In such a case, remand is unnecessary. *Id.* Therefore, Judge Strand explains that the question becomes "whether the record contains sufficient evidence concerning Barrows's physical RFC to support the ALJ's findings despite the lack of a medical opinion from any doctor who treated or examined Barrows." *Id.* at 23. From Judge Strand's perspective, there is "nothing" in this record "that even arguably could make up for the lack of medical evidence from any treating or examining source to support the ALJ's decision."[10] *Id.* at 24. Judge Strand then focuses his attention on Barrows's physical limitations: "The ALJ found that Barrows has the severe physical impairments of degenerative disc disease of the lumbar spine and obesity." *Id.* For Judge Strand, it is problematic that "no doctor who ever treated or examined Barrows provided an opinion as to the effects of these impairments on Barrows's ability to function in the workplace." *Id.*

Judge Strand also finds that this case is distinct from *Agan v. Astrue*, 922 F.Supp.2d 730, 755–56 (N.D. Iowa Feb. 7, 2013). In *Agan*, as Judge Strand notes, no further development of the record was necessary for the ALJ's RFC determination because "other medical evidence" provided sufficient support for finding Agan was able

---

[10] In reaching this holding, Judge Strand expresses his discontent that the Commissioner failed to give guidance regarding the applicability of *Nevland* to this case. This is because "Barrows cited *Nevland* in support of the proposition that the ALJ 'should have sought [the] opinion of the treating doctor or ordered a consultative examination.'" Report at 23–24 (citation omitted). In agreement with Judge Strand, I, too, find it odd that the Commissioner failed to address *Nevland* given Barrows's specific reliance on that case. While the Commissioner makes up for that shortcoming in her most recently filed brief objecting to Judge Strand's R & R, the Commissioner does not address all of the factually analogous and positive authority from this judicial district to advance her arguments.

to function in the workplace. Report at 24. After surgery, Agan's sole impairment—back pain—was resolved. By contrast, despite taking pain medication and having epidural steroid injections,[11] Barrows's back pain persists. *Id.* at 24–25. According to Judge Strand, the inconsistencies in the record as to Barrows's condition from different medical providers "should have alerted the ALJ to the need for a medical opinion from a treating or examining source to resolve any discrepancies and determine Barrows's physical work-related limitations associated with his degenerative disc diseases." *Id.* at 25.

Finally, Judge Strand emphasizes the limitations that accompany Barrows's "extreme obesity" and "degenerative disc disease" in furtherance of the argument that the record was not properly developed for the ALJ to make a physical RFC determination. *Id.* In Judge Strand's words,

> No medical evidence fills the gap created by the ALJ's failure to obtain an opinion from a treating or examining source as to how those impairments, alone and in combination with each other, affect Barrows's ability to function in the workplace. If anything, the medical evidence suggests Barrows experiences greater physical limitations than provided in the RFC.

---

[11] Barrows testified at the ALJ hearing that he has had "over 15 [steroid] injections in [his] back." Tr. 44. Barrows has also tried pain medications, muscle relaxants, aquatic therapy, physical therapy, chiropractic adjustments, and transcutaneous electrical nerve stimulation (TENS) with varying results. Tr. 18, 45, 300. "He indicated that he has received some temporary relief from injections and from chiropractic therapy." Tr. 18. Epidural steroid injections also "helped [Barrows] somewhat," and he reported that one injection gave him approximately 3 months of pain relief. Tr. 350, 390. He also gains some relief from his pain medications. Tr. 46. He also reported to Dr. Rupinder Singh on April 20, 2010, that he was "using Percocet at home which ha[d] been keeping his symptoms under control." Tr. 433.

*Id.* For the above reasons, Judge Strand recommends that I find the ALJ's conclusion, that Barrows retains the ability to do other work available in the national economy, to be unsupported by substantial evidence in the record. *Id.*

Based on the decision of the Eighth Circuit Court of Appeals in *Nevland*, Judge Strand asserts that "remand is necessary to correct [the ALJ's] error." *Id.* In an explanatory footnote following that recommendation, Judge Strand asserts that "the evidentiary hole created by the ALJ's failure to obtain an opinion from a treating or examining source as to Barrows's physical RFC requires remand for further development of the record." *Id.* at 25–26 n.8. More specifically, Judge Strand recommends that I order the ALJ to further develop the record as to Barrows's physical impairments by "obtaining an opinion from a treating or examining acceptable medical source as to his physical RFC." *Id.* at 26. If I adopted Judge Strand's recommendation, the ALJ would have to reconsider Barrows's disability claim based on that one additional medical opinion.

## V.    COMMISSIONER'S OBJECTIONS

On July 15, 2014, the Commissioner filed timely objections to the R & R. Defendant's Brief (docket no. 18). The Commissioner argues that the ALJ fulfilled its duty to develop the record, and Barrows's physical RFC assessment is supported by substantial evidence on the record as a whole. Defendant's Brief at 7.

The Commissioner objects to Judge Strand's interpretation of *Nevland*, 204 F.3d 853, and the arguments Judge Strand made in relation to *Nevland* on pages 21 and 25 of his R & R. According to the Commissioner, Judge Strand's interpretation that, under *Nevland*, "the Commissioner 'ordinarily' cannot meet her burden of production at Step

Five without an opinion from at least one doctor who actually examined the claimant," is not supported by the regulations or case law.[12] *Id.*

---

[12] The word "ordinarily" is only used in the following proposition in *Nevland*: "The opinions of doctors who have not examined the claimant *ordinarily* do not constitute substantial evidence on the record as a whole." *Nevland*, 204 F.3d at 858 (emphasis added) (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *see also Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) ("At the fifth step of the sequential evaluation process, the opinion of a non examining doctor usually is not 'substantial evidence on the record as a whole' and neither is the vocational expert's testimony when responding to a hypothetical based on the opinion of a non examining doctor." (quoting *Nevland*, 204 F.3d at 858)). Thus, the Commissioner correctly asserts that Judge Strand "appears to overstate the law" in *Nevland* by asserting that the Commissioner "ordinarily" is unable to meet Step Five's burden of production without at least one examining doctor's opinion. Defendant's Brief at 7–8; *see also Nevland*, 204. F.3d at 858. Although not argued by the Commissioner, I find that this case is distinct from *Jenkins v. Apfel*, which is the case that the Eighth Circuit Court of Appeals cites to in *Nevland* following the proposition at issue. 196 F.3d at 924–25. In *Jenkins*, the ALJ decided that the claimant "had a severe impairment" but determined that he still had the RFC "to do light and sedentary work." *Id.* at 923. However, unlike the present case, in *Jenkins* the ALJ's RFC finding was based *solely* on a non-treating physician's assessment, there was "no other evidence in the record to support the ALJ's [RFC] finding besides the non-treating physician's assessment," and additional medical reports by a treating rheumatologist were submitted after the ALJ's hearing. *Id.* at 924–25. Importantly, the additional evidence provided that the claimant had "less [RFC] than the ALJ concluded." *Id.* at 924. Conversely, in this case, the ALJ relied on four non-treating medical experts' opinions; observations by medical professionals, including a psychologist, treating physicians, and other medical professionals; Barrows's own subjective descriptions of his limitations and capabilities; and VE testimony. Not to mention, additional evidence from a treating physician was not submitted, following the ALJ's hearing, to suggest that Barrows has less physical RFC than the ALJ concluded in his opinion. It is also worth noting that, in *Jenkins*, the claimant's daily activities were significantly more limited than Barrows. *Id.* at 926. Unlike Barrows, the claimant in *Jenkins* was severely restricted: he was unable to personally groom himself, open doors, or make meals, and he gave up his only

The Commissioner further argues that whether the record includes a treating or examining medical source's assessment of a claimant's functional limitations "may be dependent on circumstances beyond the control of the ALJ and the plaintiff," and the regulations do not require an ALJ to recontact a treating source or obtain a consultative examination report in every case. *Id.* at 7–8. Also, the Commissioner contends, "The duty to develop the record does not abrogate plaintiff's burden of proof." *Id.* at 8. According to the Commissioner, Judge Strand's R & R "appears to overstate the law" because it suggests that "there must be medical evidence from a treating or examining source that precisely supports each component of the RFC, or treatment records that 'fill the gap' by explicitly defining functional limitations." *Id.* The Commissioner cites to *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) for the proposition that when an ALJ evaluates an RFC, the ALJ "is not limited to considering medical evidence exclusively." *Id.* Advancing this argument, the Commissioner notes the distinction between "a medical source statement" and an "administrative finding known as the RFC assessment."[13] *Id.* at 8–9 (quoting SSR 96-5 p, 1996 WL 374184, *4 (S.S.A. 1996)).

Seeking to refute Judge Strand's interpretation of *Nevland* and his recommended findings, the Commissioner also cites to *Martise*, 641 F.3d at 927. *Id.* at 9. In doing so, she argues that the Eighth Circuit Court of Appeals "rejected the argument that an

---

hobbies, which included, among other things, fishing. *Id.* (Fishing becomes relevant to this case later.)

[13] "A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Defendant's Brief at 8–9 (quoting SSR 96-5p, *4).

RFC must be linked in each of its components to a specific medical opinion." *Id.* The Commissioner continues by explaining the consequence of requiring an ALJ to adopt a medical source's opinion on the issue of a claimant's RFC: it "'would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Id.* (citing SSR 96-5p, *2). The Commissioner also brings cases to my attention in which federal circuit courts ruled in the Commissioner's favor on this issue.[14]

The Commissioner bolsters her argument that the ALJ fulfilled his duty of developing the record with regard to Barrows's physical RFC. She asserts that "no 'crucial issue' remained undeveloped" and sufficient evidence existed "to determine whether plaintiff was disabled."[15] Defendant's Brief at 10. For that reason, the ALJ met his duty of developing the record, argues the Commissioner, and an additional medical opinion to support his RFC finding was unnecessary. "The record contained substantial treatment records and the opinion of the State agency medical consultant, Dr. Gernes, in support of the physical RFC limitations found by the ALJ," the Commissioner writes.

---

[14] *See, e.g.*, *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) ("[T]he ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Ross v. Barnhart*, 119 F. App'x 791, 795 (7th Cir. 2004) (unpublished) ("Although medical evidence, when presented, is certainly important, '[t]he determination of RFC . . . is an issue reserved to the SSA,' and an ALJ need not consider a medical opinion conclusion." (quoting *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).

[15] "While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician *unless a crucial issue is undeveloped*.'" *Goff*, 421 F.3d at 791 (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)) (emphasis added).

*Id.* I turn to highlight some of the most persuasive evidence discussed in the Commissioner's brief, which the Commissioner provides in support of the claim that the ALJ's physical RFC finding "is based on all relevant evidence, including observations of treating physicians and others and an individual's own description of his limitations." *Id.* at 10 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (quoting *Roberts v. Apfel*, 222 F.3d 446, 469 (8th Cir. 2000)).[16]

First, the Commissioner asserts that Barrows's "treatment records support the RFC for a restricted range of light work," such as x-rays performed in 2010 and 2011 and an MRI performed in 2010.[17] Defendant's Brief at 10. On April 20, 2010, Barrows also reported that medication (*i.e.*, Percocet) was keeping his back pain symptoms under control. *Id.* at 11 (citing Tr. 433). The Commissioner also underscores the fact that "[d]espite being out of pain medications [on May 19, 2010], plaintiff rated his back pain at a four or five out of ten."[18] *Id.* (citing Tr. 350).

---

[16] I summarize the Commissioner's arguments from pages 10 to 14 of her brief here. The citations to the record are derived from the Commissioner's brief, which I reviewed.

[17] The Commissioner's brief summarizes these specific tests performed on Barrows: "X-rays in March 2010 and March 2011 and an MRI in March 2010 showed plaintiff had mild to moderate lumbar degenerative disc and spine disease, with normal alignment (Tr. 19, 400, 423, 557–59). Although the MRI showed a disc protrusion at L5-S1, straight leg testing was negative or equivocal at six physical examinations during the relevant period of alleged disability, from March 18, 2009 through August 6, 2012 (Tr. 19, 337, 349, 577, 580, 583)." Defendant's Brief at 10–11.

[18] The record indicates that on May 19, 2010, Barrows "needs refills [for] Lyrica [and] Oxycodone." Tr. 350. I agree with the Commissioner that such information appears inconsistent with Barrows's complaint to the ALJ that, without pain medication, his pain rates at a 10 on a 0 to 10 pain scale. Tr. 18. However, it is unclear from the record whether Barrows was seeking additional medication in advance of being without medication. Of course, it is not inconceivable that Barrows ran out of his medication.

Second, Barrows's physicians did not restrict his physical activity. In fact, Shailesh Desai, M.D., recommended that Barrows "join a fitness center in May of 2010." *Id.* (citing Tr. at 349). Joleen Stout, a physical therapist, set out a physical therapy treatment plan consisting of an independent exercise program on July 19, 2010. *Id.* (citing Tr. at 426). Dr. William Morton, a psychologist, also noted on May 31, 2011, that Barrows showed no difficulty with extended sitting or rising from a seated position. *Id.* (citing Tr. 437). Also, despite "muscle tenderness" and "back spasms" noted by an examination dated March 14, 2012, Barrows had "'pretty good' range of motion in his back and full strength." *Id.* (citing Tr. 580).

Third, Barrows's own reports as to his abilities and activities are consistent with the ALJ's physical RFC determination. While Barrows testified at the ALJ's hearing on June 12, 2012, that he could lift 10 pounds, on April 24, 2011, Barrows claimed he could

---

This is because, as Barrows testified at the ALJ hearing, when he ran out of his pain medication on a prior weekend, he self-medicated by resorting to smoking marijuana. Tr. 61. Also, when he saw Dr. David Fran on July 7, 2010, he reported being out of pain medications for "approximately 2 weeks now." Tr. 390. Therefore, assuming Barrows was out of medication at the time of his examination on May 19, 2010, the Commissioner would be correct in suggesting that Barrows's assertion that his pain was only at a "four or five" conflicts with his prior complaints that his pain is at a 10 without medication. Tr. 350. Even if I assume that Barrows was on medication at the time of his appointment on May 19, 2010, his report of pain at only a "four or five" conflicts with his prior complaints of pain *with* medication. Tr. 350. For example, Barrows told his physical therapist that "the least amount of pain he usually has [from his back] is 6/10." Tr. 426. Also, at the ALJ hearing on June 12, 2012, Barrows alleged that even after taking medication, he was experiencing pain at a 6 on a 10 pain scale. Tr. 46.

lift up to 20 pounds in a function report.[19] *Id.* (citing Tr. 307). The Commissioner also highlights some of the "relatively strenuous activities" that Barrows performed after his alleged onset date of disability, which I recite here: (1) he rode his bike three times per day in July 2010 (Tr. 427); (2) he climbed stairs while painting apartments in July 2010 (Tr. 428); (3) he installed floors, insulation, and drywall in his mother's home in August 2010 (Tr. 428); (4) he stood on a table to do overhead plumbing work in September 2010 (Tr. 347); (5) he did "a lot of walking" and tried to lose weight in April 2011 (Tr. 585); and (6) he lifted a couch while cleaning in May 2012 (Tr. 577–78). *Id.* at 11–12.

## VI. DISCUSSION

### A. Standard of Review

Below I address whether to accept or reject Judge Strand's recommendation that the Commissioner's decision be reversed and remanded for further proceedings. I review *de novo* the portion of the R & R to which the Commissioner objects.[20] 28 U.S.C. §

---

[19] Barrows wrote in his Adult Function Report, "[I]t's hard to lift anything over 20 lbs." Tr. 307. The ALJ wrote that Barrows "can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently." Tr. 16–17.

[20] As explained in 28 U.S.C. § 636(b)(1)(C):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly

636(b)(1)(C). As noted above, the Commissioner objects to Judge Strand's finding that the ALJ did not fully and fairly develop the record as to Barrows's physical RFC. Barrows does not raise any objections to Judge Strand's R & R. Therefore, I must "make a de novo determination" as to the portion of the R & R relating to the ALJ's duty to develop the record with regard to Barrows's physical RFC. 28 U.S.C. § 636(b)(1)(C). I review the other portions of the R & R only for clear error. *See* Fed.R.Civ.P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Having reviewed the record, I find Judge Strand's recommendations, which were not objected to by the parties, are not clearly erroneous.

As to the ALJ's decision to deny social security benefits, such decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Guilliams*, 393 F.3d at 801). "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' [the Commissioner's] conclusion." *Eichelberger*, 390 F.3d at 589 (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002)). "If substantial evidence supports the ALJ's decision, [the Court] will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because [the Court] would have decided differently." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The Eighth Circuit Court of Appeals has indicated that it "defer[s] heavily to the findings and

---

objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.")

conclusions of the Social Security Administration."[21] *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).

### B.     ALJ's Duty to Develop the Record
### Fairly and Fully

As the Eighth Circuit Court of Appeals has explained, the ALJ "bears a responsibility to 'develop the record fairly and fully, independent of the claimant's burden to press his case." *Cox*, 495 F.3d at 618 (quoting *Snead*, 360 F.3d at 838). Unless there is some showing by the claimant that he or she "was prejudiced or treated unfairly by how the ALJ did or did not develop the record," remand is not appropriate. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citing *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994)).

The Eighth Circuit Court of Appeals noted in *Lauer v. Apfel*,

> "[S]ome medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000).

245 F.3d 700, 704 (8th Cir. 2001). "Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." *Cox*, 495 F.3d at 619.

---

[21] The Eighth Circuit Court of Appeals has gone so far as to assert, "We may not reverse merely because the evidence is capable of supporting the opposite conclusion." *Hensley v. Barnhart*, 352 F.3d 353, 355 (2003) (citing *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)).

(citing *Lauer*, 245 F.3d at 704; *Dykes*, 223 F.3d at 866 ("To the extent [claimant] is arguing that [RFC] may be proved *only* by medical evidence, we disagree.")).  There need not be "medical evidence that precisely supports each component of the RFC," and a claimant's RFC cannot be proven "*only* with medical evidence." *Peterson v. Colvin*, Case No. 13–00329–CV–W–ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) (citing *McKinney*, 228 F.3d at 863; *Dykes*, 223 F.3d at 866).

Accordingly, the issue before me is whether Barrows's record was undeveloped such that the ALJ had a duty to gather additional medical evidence before making its physical RFC determination.  In order to address this issue, I initially turn to consider *Nevland*, 204 F.3d 858, which explains the ALJ's duty to develop the record, and the progeny of *Nevland* in this judicial district.  Following that discussion, I apply the law relating to the ALJ's duties to develop the record to decide whether the ALJ committed error here.  This issue turns on "whether [Barrows] was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad*, 999 F.2d at 1234.  In the absence of "unfairness or prejudice," I will affirm the ALJ's decision.  *Id.*

## C.  Nevland *and its Progeny in this Judicial District*

*Nevland* is a well-reasoned opinion authored by Senior District Judge Robert W. Pratt of the United States District Court for the Southern District of Iowa, who sat by designation on the Eighth Circuit Court of Appeals.  In *Nevland*, the appellate court reversed and remanded the case to the district court because the ALJ did not meet its duty to fully and fairly develop the record before finding, at Step Five, that a claimant was not disabled.  *Nevland*, 204 F.3d at 858.  "The *only* opinions expressed regarding [the claimant's] [RFC] [were] from doctors who completed forms for Disability Determination Services, but who had never examined him." *Id.* at 856 (emphasis added).

Other non-examining and non-treating doctors "opined that [the claimant] [did] not have a severe mental impairment." *Id.* While the claimant's impairments prevented him from doing his past work, it was unclear how his impairments affected his RFC to do other work. Moreover, there were "numerous treatment notes" as to the claimant's impairments, but "not one of [the claimant's] doctors was asked to comment on his ability to function in the workplace." *Id.* at 858.

In reaching his decision to reverse and remand the ALJ's decision finding the claimant not disabled, Judge Pratt reasoned:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.*

*Id.* Because the record lacked medical evidence, and thus, was undeveloped, the appellate court reversed and remanded the case, finding that "the ALJ should have sought [a medical] opinion from [the claimant's] treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [the claimant's] mental and physical residual functional capacity." *Id.*

Following *Nevland*, as Judge Strand notes in his R & R, I have applied that seminal case in several circumstances where I found the record provided little medical evidence relating to the claimant's work-related limitations, and I remanded with instructions for

the ALJ to further develop the record.[22]    *See* Report at 24.   Recently, in *Kruger v.*
*Colvin*, I adopted the recommendations in Judge Strand's R & R to reverse the
Commissioner's decision and remand the case for further proceedings because the ALJ
did not sufficiently develop the record regarding the claimant's physical impairments.
No. C 13–3036, 2014 WL 2884038, *3 (N.D. Iowa June 25, 2014).

_____

[22] *See, e.g.*, *Walker v. Colvin*, No. C 13–3021, 2014 WL 2884028, *2 (N.D. Iowa June
25, 2014) (reverse and remand, finding that *Nevland* compelled remand because the only
medical evidence regarding claimant's migraines included claimant's treatment records,
which did "nothing to describe how [the claimant's] migraines do, or might, affect [the
claimant's] ability to work," and non-examining, state consultants' opinions based on
those records, and the records were "terse summaries of individual treatment sessions
that offer[ed] no guidance as to how [the claimant's] migraines affect[ed] her life and
everyday function."); *see also Niebaum v. Colvin*, No. C 13–4062, 2014 WL 2815355,
*2–*3 (N.D. Iowa June 23, 2014) (reverse and remand, finding that the record contained
insufficient medical evidence from which the ALJ could determine claimant's work-
related limitations because the record only consisted of opinions by state agency
consultants; treatment records were "either from examinations outside the relevant time
period, or provide scant information regarding [the claimant's] potential workplace
limitations"; the medical records "primarily discuss [the claimant's] substance abuse
history, rather than the mental and physical conditions underlying [the claimant's]
disability claims"; and the Commissioner conceded that the ALJ may not have supported
her RFC determination with substantial evidence); *Al-Hameed v. Colvin*, No. C 13–3009,
2013 WL 6858427, *16 (N.D. Iowa Dec. 30, 2013) (reverse and remand based on
*Nevland* where "the record [ ] contain[ed] insufficient evidence of 'the nature and severity
of [the claimant's] impairments during the relevant period of time, including her
symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments,
and the resulting restrictions.'"); *Hattig*, 2013 WL 6511866, *4, *11 (reverse and
remand, agreeing with Judge Strand's R & R that the record, which "contained no
medical opinion from a treating source," was not sufficiently developed, and noting that
the Commissioner's citations to the record "simply [did] not discuss, or provide evidence
of, how [the claimant's] RFC would affect her ability to do work or function in the
workplace," and thus "*Nevland* compel[led] remand in this case."). As discussed below,
these cases present inapposite fact patterns, or are otherwise distinguishable because the
record before me does not fail to illustrate how Barrows's physical limitations affect his
everyday functioning or ability to work.

In *Kruger*, the Commissioner argued that "no crucial issue was undeveloped" because of the state agency consultative reports about the claimant's impairments and the claimant's treatment records. *Id*. One of the reasons compelling Judge Strand to conclude that the ALJ failed to properly develop the record relating to the claimant's physical impairment was that "the record contain[ed] insufficient evidence of 'the nature and severity of [the claimant's] impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions.'" *Kruger v. Colvin*, No. C13–3036, 2014 WL 1584411, *10 (N.D. Iowa April 21, 2014) (quoting *Hattig*, 2013 WL 6511866 at *11). In addition, Judge Strand noted the ALJ only relied on "the opinions of doctors who did not examine [the claimant] to reach conclusions concerning the extent of [her physical] limitations." *Id*.

Based on *Nevland*, I found that the state agency consultative reports relied upon by the Commissioner in *Kruger* were "alone insufficient to support the ALJ's decision." *Kruger*, 2014 WL 2884038, *3    I also agreed with Judge Strand that the "medical records" did not "'fill the gap.'" *Id*. Quoting the decision of the Eighth Circuit Court of Appeals in *Cox*, I explained that "the ALJ must be able to rely on some medical evidence that describes [the claimant's] 'functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment.'" *Id*. (quoting *Cox*, 495 F.3d at 620 n.6). Concurring with Judge Strand, I wrote that "the medical records fall short" in this regard. *Id*. Moreover, although the Commissioner argued that the medical records, such as the claimant's diagnostic testing and examinations, "'[did] not suggest significant limitations that would preclude her from performing sedentary work,'" I was not told which specific parts of her string-citations to the record supported the Commissioner's argument. *Id*. (citation omitted).

On the other hand, as I made clear in *Kruger*, "*Nevland* does not compel remand in every case that lacks a medical opinion from a treating physician." *Id.* *2. Not long ago, in *Figgins v. Colvin*, I rejected Judge Strand's recommendation to reverse and remand the ALJ's decision so that the ALJ could further develop the record and revisit the claimant's RFC determination, even though Judge Strand found that the record did not "'contain a medical opinion from an acceptable treating or examining source as to [the claimant's] mental RFC.'" No. C 13–3022, 2014 WL 1686821, *5 (N.D. Iowa April 29, 2014) (quoting *Figgins v. Colvin*, No. C13–3022, 2014 WL 28648, *17 (N.D. Iowa January 2, 2014)). In *Figgins*, the ALJ concluded that the claimant had the following severe impairments: "hepatitis C, bipolar disorder, anxiety, obesity, borderline personality disorder, and history of substance abuse." *Id.* at *1. However, the ALJ determined that the impairments did not meet or medically equal the severity of a listed impairment and that the claimant had the RFC to perform "medium work." *Id.* I reasoned that *Nevland* "[did] not compel remand [in *Figgins*]." *Id.* at *10. This is because *Figgins* was not a case in which there was "no medical evidence" as to the claimant's mental RFC. *Id.*

By contrast, as Judge Strand even noted in his R & R, "'the record in [*Figgins*] contain[ed] a rather unique array of evidence concerning [the claimant's] mental impairments,'" including progress notes or opinions from treating and evaluating medical experts discussing the claimant's mental impairments. *Id.* (quoting *Figgins*, 2014 WL 28648, *17). "Many of these records . . . explicitly discuss[ed] [the claimant's] employability, while others 'allow[ed] for an understanding of how [the claimant's] limitations function[ed] in a work environment.'" *Id.* (quoting *Cox*, 495 F.3d at 620 n.6). By way of conclusion, I related *Figgins* to a prior decision of mine, *Agan v. Astrue*, and concluded that "'[t]he medical evidence, including . . . treatment notes from the treating physicians [and other caretakers], provide[d] sufficient support for' the ALJ's

24

findings, such that the ALJ was not required to further develop the record." *Id.* (quoting *Agan*, 922 F.Supp.2d at 756). Thus, "[r]emand under *Nevland*" was not necessary. *Id.*

In *Agan*, I held that an ALJ properly denied benefits to a claimant, and the ALJ had not obtained a treating or examining doctor's opinion as to the claimant's work-related limitations. *Agan*, 922 F.Supp.2d at 756. The claimant's disability claim in *Agan* was based on the claimant's back pain, and he received numerous epidural steroid injections in an attempt to relieve his pain. *Id.* at 735–36, 752. The facts in *Agan* were distinct from the facts in *Nevland*. In *Agan*, the ALJ's RFC determination was "supported by substantial evidence in the record." *Id.* at 755. "The ALJ did not rely solely on non-treating doctors to form an opinion on [the claimant's] RFC." *Id.* Rather, the ALJ's RFC determination was "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Id.* (quoting *McKinney*, 228 F.3d at 863).

Specifically, I highlighted the fact that the claimant's record consisted of "medical evidence following [the claimant's] last back surgery . . . which indicated that he was 'doing very well post-operatively.'" *Id.* Indeed, the claimant had a successful recovery after surgery: "[p]hysical examinations . . . indicated normal functioning of his extremities." *Id.* Although Agan had "post-surgery limitations on lifting, bending, and twisting," he was eventually able to return to full-time work and the record consisted of "no functional limitations" nor an "indication of worsening condition." *Id.* Based on the record in *Agan*, I concluded that "[t]he medical evidence, including physical examination treatment notes from the treating physicians, provide[d] sufficient support for a finding that [the claimant] was able to function in the workplace." *Id.* at 756. Therefore, agreeing with Judge Strand's recommendation, I held that "no further development of the record was necessary for the ALJ's RFC determination." *Id.*

### D.     Analysis

The next step is to determine whether this case is more similar *Nevland*, *Hattig*, *Kruger*, *Walker*, *Niebaum*, and *Al-Hameed*, or the "exception" cases—*Agan* and *Figgins*—summarized above.[23]  Judge Strand takes issue with the ALJ's reliance on two non-treating, non-examining doctors' opinions in furtherance of the argument that the ALJ did not fully and fairly develop the record here.  Report at 22.  Judge Strand also analogizes this case to *Nevland*.  In doing so, he indicates that *Nevland* supports his recommendation that I reverse and remand with instructions for the ALJ to make a new physical RFC determination after the ALJ develops the record by "obtaining an opinion from a treating or examining acceptable medical source as to [Barrows's] physical RFC." Report at 22–23.  I do not agree.

In my view, reasonable minds could disagree, reliance on *Nevland* is misplaced here.   The ALJ is permitted to base its RFC determination on "a non-examining physician's opinion *and* other medical evidence in the record."  *Willms v. Colvin*, Civil No. 12–2871, 2013 WL 6230346, *16 (D. Minn. Dec. 2, 2013); *see also Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of

---

[23] In Judge Strand's R & R for *Figgins*, in which he recommended that I remand the case in order for the ALJ to more fully develop the record with the necessary medical opinion evidence based on *Nevland*, which I ultimately rejected, he referred to *Agan* as "the 'exception' case."  *Figgins*, 2014 WL 28648, *18.  I find that categorization useful for understanding the dichotomy between the cases I have affirmed and remanded based on the ALJ's adequate or inadequate development of the record.  It is surprising that, in her brief objecting to the R & R, the Commissioner does not identify the factual distinctions between *Nevland* and its progeny, and this case, or draw out the factual similarities between this case and the exception cases, such as *Figgins* and *Agan*.  Although *Figgins* and *Agan* are discussed in Judge Strand's R & R, Report at 23, the cases are not mentioned by the Commissioner in her brief objecting to Judge Strand's R & R.

Dr. May [an Iowa Disability Determination Services physician, who reviewed the claimant's medical evidence,] along with the medical evidence as a whole."). Here, the record more closely parallels the record in *Figgins* because it consists of "'a rather unique array of evidence concerning [Barrows's] [physical] impairments.'"[24] *See Figgins*, 2014 WL 1686821, *10 (citation omitted).

For example, as discussed below, the ALJ determined Barrows's physical RFC "based on *all of the relevant evidence*," including: (1) medical records; (2) observations of treating physicians and others; and (3) Barrows's own description of his limitations. *See McKinney*, 228 F.3d at 863 (emphasis added); *see also Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC."); *Casey*, 503 F.3d at 696 ("The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." (quoting *Harris*, 356 F.3d at 929)). "Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, a claimant's residual functional capacity is a medical question." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer*, 245 F.3d at 704; *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). In this case, there was "some medical evidence" in the record from medical professionals as to Barrows's "ability to function in the workplace" to support the ALJ's RFC determination. *Cox*, 471 F.3d at 907; *see also Casey*, 503 F.3d at 697.

---

[24] According to Judge Strand's R &R in *Figgins*, the record consisted of: (1) "Treatment records, but no medical opinions, from Dr. Ramos, a treating psychiatrist"; (2) "Treatment records and opinions from a social worker and a nurse practitioner, neither of whom is an acceptable medical source"; (3) "An opinion from an examining psychiatrist who evaluated Figgins's parenting abilities, not her vocational abilities and limitations (and whose opinion the ALJ rejected)"; and (4) "Opinions from state agency medical consultants who never examined Figgins." *Figgins*, 2014 WL 28648, *16–*17.

While the medical evidence discussed below does not explicitly attest to Barrows's employability, like many of the records in *Figgins*, 2014 WL 1686821, *10, the evidence does "allow for an understanding of how [Barrows's] limitations function in a work environment." *See Cox*, 495 F.3d at 620 n.6 (noting that a claimant's records need *not* give "explicit reference to 'work' in close proximity to the description of [a claimant's] various medically evaluated limitations," or work-related limitations, as long as the records describe the claimant's "functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment."). I turn to consider the ALJ's determination of Barrows's RFC based on the (1) medical records, (2) observations of treating physicians and others, and (3) Barrows's descriptions of his limitations and capabilities. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (citing 20 C.F.R. §§ 404.1545(a), 404.1546 (2001) (responsibility for determining RFC rests with ALJ; determination should be based on all relevant evidence, including claimant's own description of limitations, observations of treating physicians and others, and medical records)); *see also* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

### 1.    *Medical Records*

First, unlike *Nevland*, where the record lacked "*medical* evidence about how [the claimant's] impairments affect his ability to function now," the ALJ relied upon a record that consists of recent medical evaluations and tests as to the effects of Barrows's impairments on his ability to function. *See Nevland*, 204 F.3d at 858. Indeed, the ALJ conducted a thorough summary of his medical records relevant to his physical RFC assessments. Tr. 16–22. The ALJ summarized the record, noting that although the record [intermittent[ly] shows some weakness and positive straight leg raise testing," the

record "does not show an inability to ambulate effectively."[25]  Tr. 15.  The ALJ also considered Barrows's most recent medical records, which like the claimant's medical records in *Agan*, 922 F.Supp.2d at 755, did not demonstrate a worsening condition,[26] but rather an improving condition for Barrows.  As the ALJ explained,

> The most recent examinations have shown the claimant to be walking well and denying lower extremity weakness (see Exhibit B18F, pp. 1, 3, 5).  Notes also indicate that no surgical intervention is indicated (p. 1).  While the representative has alleged consistently positive straight leg raise testing results, treatment notes show only occasionally positive tests, with other tests being "negative" or "equivocal" (see Exhibits B13E, B18F).

Tr. 19.  The ALJ also took note of x-rays and MRIs performed, which showed Barrows had only "[m]inimal early degenerative disc disease" and "[m]ild to moderate multifocal degenerative disc disease and spine disease," with 'disc protraction right eccentric at L5-S1 projecting into the right foramen and contacting the right L5 ganglion' (see Exhibits B7F, p. 6; B16F, p. 3)."  Tr. 19.  The mild to moderate degenerative changes are inconsistent with Barrows's assertions of disability.  Also, the imaging of Barrows's lumbar spine since his application date for disability benefits "has shown only 'very minimal arthritic spurring of the lumbar spine', with 'well maintained' disc spaces, and normal alignment [of the lumbar spine] (see Exhibits B7F, p. 29)."  Tr. 19, 400, 423, 559.  As noted above, the ALJ highlighted that "treatment notes show only occasionally

---

[25] ALJ Leonard Nelson also noted in his opinion on March 17, 2009, that Barrows "ha[d] not demonstrated an inability to ambulate effectively."  Tr. 82.  At that time, Barrows "ha[d] not been prescribed any assistive devices for walking," and it does not appear from the record that Barrows has been prescribed such devices since then.  Tr. 84.

[26] In the words of the ALJ, "The undersigned also notes that evidence received after the completion of Dr. Gernes assessment [the state agency consultant] does not show worsening of the claimant's condition."  Tr. 20.

positive [straight leg raise] tests, with other tests being 'negative' or 'equivocal[.]'" Tr. 19, 337, 349, 577, 580, 583.

In addition, the ALJ summarized Barrows's medical records and separately discussed his alleged impairment of obesity. *See* Tr. 15–16, 19. With regard to Barrows's obesity, the ALJ noted that "[Barrows's] obesity is not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the listings found in any musculoskeletal, respiratory, or cardiovascular body system listing affected by obesity[.]" Tr. 15–16. The record also illustrates that Barrows's weight loss has improved over time. For example, Barrows reported to Dr. Shailesh Desai on May 19, 2010, that the most he had ever weighed in the past was 425 pounds; however, he weighed 349 pounds then. Tr. 349.

In April and July of 2010, Barrows reported to Dr. Rupinder Singh that Percocet was keeping his back pain symptoms "under control." Tr. 433. Barrows also indicated that an epidural steroid injection seemed to give him three months of pain relief. Tr. 18, 44. This evidence, alone, weakens Barrows's claim that he suffers from disabling back pain. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003); *see also Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993))).

Finally, the ALJ noted that Nurse Practitioner Eckhart assigned Barrows a Global Assessment of Functioning (GAF) score of sixty five. Tr. 20. "A GAF rating of 61–70 indicates 'some mild symptoms [ ] OR some difficulty in social, occupational, or school functioning [ ], but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Chopp v. Colvin*, No. ED CV 12–291, 2013 WL 1120085, *7 n.5 (C.D. California Mar. 18, 2013) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed.2000)). The ALJ noted that Barrows's GAF

scores were consistent with his treatment records, which suggest "only 'mild' symptoms."[27]  Tr. 20.

## 2.    Observations of Treating Physicians and Others

Second, as alluded to above, while the ALJ in *Nevland* "relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [the claimant's] RFC," the ALJ in this case relied on the opinions of treating, consultative, and non-treating, non-examining sources to form an opinion of Barrows's physical RFC.  The ALJ's physical RFC finding is consistent with Dr. Morton's observations in his "consultative psychological examination" of Barrows on May 31, 2011.[28]  Tr.  20.  *See Nevland*, 204 F.3d at 858 ("In our opinion,

---

[27] Nurse Practitioner Eckhart is not a "treating source," but rather, she is considered under the "other sources" category. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (noting that nurse practitioners are "[o]ther sources") (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)).  Ultimately, the ALJ gave less weight to Eckhart's opinion because the limitations she described were "markedly inconsistent with the treatment records, including the consistent GAF scores suggesting only 'mild' symptoms," and her limitations were also different from "the capacity [Barrows] demonstrated during a consultative examination."  Tr. 20.  "For these reasons, the undersigned finds Nurse Practitioner Eckhart's opinion inconsistent with the evidence of record as a whole," wrote the ALJ.  Tr. 20.

[28] The ALJ gave Dr. Morton's assessment great weight because he "personally examined" Barrows, he gave a "thorough and cogent examination report," and his assessment was "consistent with Barrows's treatment records," and was affirmed by two non-treating doctors who independently reviewed the record, Dr. Russell Lark and Dr. Myrna Tashner. Tr. 21, 439; *see also* 20 C.F.R. §§ 404.1527(c) (articulating factors used to weigh medical opinions).  As the ALJ noted, "Dr. Lark found Dr. Morton's assessment to be consistent with evidence of record as a whole, and gave Dr. Morton's opinion significant weight, concluding that the claimant 'is able to complete simple, repetitive to moderately complex tasks on a sustained basis' (p. 13)."  Tr. 21.  Dr. Tashner

the ALJ should have sought such an opinion from Nevland's treating physicians *or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity.*") (emphasis added). "Dr. Morton concluded that [Barrows's] 'overall level of independent functioning is adequate,'" wrote the ALJ. Tr. 21. The ALJ recognized Dr. Morton's observations that "[Barrows] presented with 'normal posture, locomotion, and gait', and had no difficulty with prolonged sitting or rising from a seated position (p. 3)." Tr. 21, 437; *see also Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (finding evidence that claimant "had full range of motion in her neck, normal tandem and narrow-based gaits, normal heel walk, and normal rotating of fists and fingers . . . no difficulty rising from a chair and had full 5/5 strength proximally and distally in both upper and lower extremities" to support ALJ's RFC finding that claimant had the RFC to perform light work).[29]

While some treating or examining doctors in the record noted that Barrows had a reduced range of motion and tenderness in his lower back, most doctors routinely observed that Barrows had full motor strength on both lower extremities.[30] Also, despite

---

subsequently reviewed the record's evidence and "affirmed Dr. Lark's findings (see Exhibit B10F)." Tr. 21, 439.

[29] ALJ Leonard Nelson also noted in his opinion on March 17, 2009, that Barrows's "[m]uscle strength was 5/5 in all four extremities and sensation was intact[.]" Tr. 82.

[30] For example, on November 25, 2009, Dr. Joseph Gee indicated that his examination of Barrows indicated tenderness and decreased range of motion and he "moves somewhat slowly and stiffly." Tr. 565. Yet, Barrows had "[n]o weakness in the lower extremities," and his "[g]ait and station [were] normal." Tr. 565. In September of that year, Dr. Gee also noted that Barrows "moves stiffly and gets up out of a chair slowly." Tr. 567. On July 7, 2010, Dr. Fran noted that Barrows had a reduced range of motion as a result of pain and tenderness in the lumbar area. He also walked with an

the "obvious discomfort," "tenderness," and back spasms noted by a recent examination,[31] dated March 14, 2012, Barrows was observed having "pretty good range of motion" in his back and full strength (*i.e.*, "5"/5). Tr. 580; *see also Moore*, 572 F.3d at 524 (citing *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding substantial evidence existed to support the ALJ's RFC determination when treating physicians found claimant had normal or full muscle strength and good mobility)).

Finally, on May 23, 2011, Dr. Gernes, a state agency consultant, reviewed the evidence of record and performed a physical RFC assessment. Tr. 19. As the ALJ noted, "Dr. Gernes found the claimant credible to the extent that his impairments would cause 'some limitations with lifting/standing/walking/sitting due to pain and decreased [range of motion] from lumbar [degenerative disc disease] in combination with morbid obesity[.]'" Tr. 19. Dr. Gernes concluded that Barrows "remained capable of work at the light exertional level, with limitation to mostly occasional postural activities and

_____

"antalgic gait," but appeared to be in "no acute distress." Tr. 390. Dr. Fran explained that Barrows had full motor strength (*i.e.*, 5 out of 5) on both lower extremities, "[d]eep tendon reflexes were grossly intact, and intact sensorium, "except for the area around his right knee, which had diminished sensation to touch and cold." Tr. 390. On February 25, 2011, Dr. Desai noted "tenderness on the mid-L/S region"; however, he wrote, "[s]traight leg raise equivocal on both sides," "[m]otor strength normal on the feet as well as on the knees and hips," "[n]o calf tenderness," and "no neurovascular compromise." Tr. 338. On March 16, 2011, Barrows asked Dr. Desai whether he was "a candidate for disability." Tr. 337. Dr. Desai's report continued: "I told him he would have to go for the Disability Exam which I do not do here. *I told him his chronic back pain can be treated and he may be able to work once he is treated and improved.*" Tr. 337 (emphasis added). I agree with the ALJ's conclusion that "the only medical opinions in the evidence of record as to physical functional capacity suggest a capacity for light exertional level work (see Exhibits B2A, B11F)." Tr. 15. The assertion that Barrows's back impairment is disabling is not supported "by an opinion from a treating or examining medical source." Tr. 15.

[31] Some examinations showed tenderness over Barrows's lumbosacral region, "but little to no muscle spasms (see Exhibit B18F)." Tr. 19, 349.

33

avoidance of concentrated exposure to extreme cold and hazards[.]" Tr. 19. Dr. May confirmed Dr. Gernes's assessment after reviewing all the evidence of record. Tr. 19, 122, 440. Therefore, contrary to Judge Strand's finding, the ALJ's determination that Barrows had the physical RFC to perform light work was supported by sufficient medical evidence, including physical examination treatment notes, observations, and assessments by treating, consultative, and non-treating, non-examining sources.

### 3. *Barrows's Limitations and Capabilities*

Third, the ALJ also considered Barrows's subjective descriptions of his limitations and capabilities in reaching a physical RFC determination. As to Barrows's limitations, the ALJ acknowledged that the record reflects that Barrows has "a history of treatment for back pain prior to the claimant's application date and continuing to the present." Tr. 19. The ALJ also took account of Barrows's "morbid obesity" and consequent limitations. Tr. 15–16, 19.

Regarding Barrows's capabilities, the ALJ highlighted that during Barrows's examination with Dr. Morton, Barrows reported that he got "adequate exercise," slept "9 or 10 hours per 24-hour day,"[32] and was "able to prepare food by himself," "participate in straightening up the home," "do laundry," and "groom at an adequate level by himself." Tr. 21. In addition, as the ALJ recognized, "Dr. Gernes noted the

---

[32] The record presents inconsistent evidence regarding Barrows's sleep schedule based on his conflicting reports and testimony. For example, at the ALJ hearing, Barrows testified to only getting "two, two/three hours and [he's] up" and he will need to take pain pills. Tr. 52. Barrows testified that he tries to go back to sleep, and "[i]t's usually during the day around noon." Tr. 53. He also reported on March 29, 2011, to Nurse Eckhart that he was sleeping five to six hours at night without naps during the day. Tr. 451. According to ALJ Leonard Nelson's opinion from March 17, 2009, Barrows "reported that he no longer required naps and was able to get up earlier in the morning." Tr. 84.

claimant's obesity and his treatment for back pain, but also noted that the claimant had reported daily activities consistent with a light exertional level." Tr. 19. The ALJ recounted Barrows's daily activities as including: "[C]aring for a child, shopping 'once a month for 6 hours', driving, doing household chores, preparing meals, and fishing."[33] Tr. 19, 98. Elsewhere in the record, it is noted that Barrows visits his mother and sister at his mother's home; cleans up after his seventeen-year old son;[34] attends medical appointments and requires no assistance in obtaining medical care; adequately grooms himself; took care of his mother after she had a stroke; and drove to Sioux City (an hour drive) around May 12, 2011. Tr. 19–21, 53–54, 58, 98, 102, 306, 326, 368, 436, 563. The record also includes Barrows reporting to Dr. Gee that his "energy [had] improved" and he was "doing more housework now," such as "laundry, washing dishes, etc." on March 26, 2009. Tr. 573; *see also Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (explaining that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain," and like Barrows, the claimant had degenerative disc disease and chronic back pain, and his pain was treated with steroid injections and he took oral pain medications).[35]

While attending physical therapy sessions, Barrows also reported to his physical therapist various activities that he performed, which were consistent with the ALJ's

---

[33] The ALJ also noted that Barrows "reported being able to do household chores such as washing dishes, vacuuming, sweeping, mopping, and cooking." Tr. 18.

[34] The son was seventeen at the time of the ALJ's hearing on June 12, 2012. Tr. 53.

[35] Unlike the present case, in *Medhaug*, the ALJ did not continue to Step Five because the ALJ determined at Step Four that the claimant had the RFC to perform his past relevant work as a taxi cab driver, user support analyst, and computer operator, all of which constituted work performed at the sedentary level. *Medhaug*, 578 F.3d at 815. Barrows's prior relevant work, as a welder, meat packing worker, and construction worker, is more physically demanding than the aforementioned jobs. Tr. 17, 36.

determination that Barrows can perform light work and inconsistent with a finding of disability. Tr. 427–28. For example, on July 15, 2010, PT Stout noted that Barrows reported "[taking] 3 bike rides yesterday and went 2 blocks down and back twice and then 12 blocks down and back once at night." Tr. 427. Barrows was also performing physical therapy exercises at home. On July 23, 2010, Barrows indicated that he was doing "a lot of household chores and activities." Tr. 427. On July 26, 2010, Barrows even reported working and painting in the "apartments upstairs." Tr. 428. On July 28, 2010, Barrows cancelled a physical therapy appointment because he was "busy moving a relative," and on August 2, 2010, he reported "doing a lot of work around his mom's house in the last several days." Tr. 428. The work performed around his mother's home included remodeling; putting in floors, insulation, and dry wall; and moving furniture and boxes for his sister.

Although Barrows became "too busy" to continue physical therapy and was discharged after not making additional appointments on September 1, 2010,[36] at his last (or fourth physical therapy session) he completed 25 minutes of therapeutic exercises. Tr. 428. This was a vast improvement from his first physical therapy session; he was only able to perform 8 minutes of exercise on the recumbent stepper then. Tr. 426. A couple months before he stopped attending physical therapy, Barrows also reported that he was "exercising" to Dr. Desai on May 19, 2010. Tr. 349.

After reviewing the medical records, observations of treating and consultative medical professionals, and Barrows's subjective remarks as to his limitations and capabilities, the ALJ concluded that Barrows had the RFC to perform light work. The

---

[36] Barrows cancelled physical therapy appointments on July 21, 2010; July 28, 2010; and August 4, 2010, before being discharged on September 1, 2010. Tr. 427–28. On July 28, 2010, and August 4, 2010, the record indicates that Barrows was "too busy" to attend the scheduled physical therapy sessions. Tr. 428.

ALJ also determined that Barrows's testimony and reports regarding "the intensity, persistence and limiting effects" of his symptoms were "not credible to the extent they are inconsistent with the [ALJ's] [RFC] assessment." Tr. 18. *See Cox*, 471 F.3d at 907 ("Because the ALJ was in a better position to evaluate credibility, we defer to his credibility determinations as long as they were supported by good reasons and substantial evidence.") (citing *Guilliams*, 393 F.3d at 801). "[Barrows] fails to recognize that the ALJ's determination regarding [his] RFC was influenced by [the ALJ's] determination that [his] allegations were not credible." *Wildman*, 596 F.3d at 969. The ALJ's decision that Barrows has an ability to function in a work environment was "supported by substantial evidence on the record as a whole." *McKinney*, 228 F.3d at 863.

### 4. *Other Considerations*

Finally, Barrows's position is further undermined based on the lack of any functional or work-related limitations by his treating physicians related to his physical impairments. Nor is there any evidence in the record that Barrows was required to use an assistive device for ambulation at all times. According to the record, Barrows will only occasionally require a cane "to get up, to get moving" in the morning, which is distinct from the claimant in *Nevland* who "always use[d] a cane when he [was] walking." *Nevland*, 204 F.3d at 858 n.2. Barrows was also only confined to a wheelchair on certain occasions as indicated in the record.[37] Tr. 50, 557. Barrows's recommended treatments

---

[37] On March 22, 2010, Barrows "was chasing his dog and felt a pop in his back." Tr. 557. He reported that his back pain was "the worst it ha[d] ever been." Tr. 557. At that time, he was in a wheelchair and also had a cane with him. Tr. 557. Until he chased after his dog, though, the record provides that Barrows was "doing reasonably well and had been up and independent[.]" Tr. 560. On April 23, 2011, Barrows was admitted to the ER, and he complained of "low back pain and left sided back pain," and he suggested it was caused by "doing a lot of walking as he was trying to lose weight." Tr. 585. He

for his impairments were *weight loss and exercise*. *See Moore*, 572 F.3d at 524 (finding ALJ's determination that claimant had the RFC to perform light work and return to work as a nurse was supported by medical evidence where the record included a physician's RFC assessment, supporting medical observations, and claimant's "physicians on numerous occasions *encouraged her to engage in physical exercise*," and "[a] lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise." (citing *Hensley*, 352 F.3d at 357)); *see also Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (finding that "[t]he lack of any significant restrictions on [the claimant's] activities by his doctors combined with his extensive daily schedule, including delivering sermons, demonstrate that [the claimant] retains his physical and mental capability to perform light work."). As in *Agan*, "I find it significant that none of [Barrows's] treating physicians ever indicated he could not or should not work." *Agan*, 922 F.Supp.2d at 750.

---

denied any fall or direct injury to his back, but he thought "he might have strained his back," and then he began to hurt. Tr. 585. On May 18, 2012, Barrows complained of pain ("9"/10 in intensity) after injuring his back by cleaning his apartment. Tr. 577. "[Barrows] moved a couch and then developed increasing pain." Tr. 577; *see also Agan*, 922 F.Supp.2d at 776 (affirming ALJ's decision that claimant was not disabled where claimant's "only complaints of back pain after his surgery were related to medication refills or injuries that exacerbated his back pain."). Yet, there were times when Barrows's pain was not related to a specific injury. For example, Barrows was in a wheelchair on August 15, 2009, when he complained of "pain in the right ankle" and "some back problems." Tr. 569. At that time, he "[did] not recall any injuries." Tr. 569. On September 6, 2010, Barrows reported to the hospital with pain in his other ankle. Tr. 347. "[Barrows] was standing on a table as he was fixing some plumbing on the ceiling." Tr. 347. The table broke, and Barrows fell and twisted his left ankle. Tr. 347.

Consider a few examples from the record where medical professionals encouraged Barrows to engage in exercise. In May of 2010, Dr. Desai recommended that Barrows join a fitness center. Tr. 349. In addition, PT Stout set out a physical therapy treatment plan consisting of an independent exercise program on July 19, 2010, and Dr. Fran approved of the exercise program designed for Barrows. Tr. at 426. On February 25, 2011, Dr. Desai "[s]trongly advised [Barrows] to seriously think about losing weight; that will definitely help with the backache." Tr. 338. On April 23, 2011, Dr. Soe Nyunt wrote, "I also advised [Barrows] to lose weight, which is probably the major culprit causing the recurrent back pain."[38] Tr. 585. On June 14, 2011, after reviewing Barrows's entire record, Dr. Gernes noted that Barrows was "advised to lose weight to help his back pain." Tr. 100.

In sum, while it is true that non-treating physicians' opinions are not substantial evidence on their own, *Nevland*, 204 F.3d at 858, the ALJ relied on "a rather unique array of evidence" to reach his RFC determination in this case. *Figgins*, 2014 WL

---

[38] Even Barrows conceded to Dr. Joseph Gee on February 26, 2010 that "[a]s his weight [had] come down, he [had] noticed his back which still bother[ed] him [had] actually improved." Tr. 563. Aside from the above medical records and Barrows's concession, ALJ Leonard Nelson discussed this matter when Barrows previously filed applications for disability insurance benefits and supplemental security income in 2006. In ALJ Nelson's decision, dated March 17, 2009, he writes, "The claimant has been assessed with significant obesity, and his treating health care providers have noted that the claimant's back pain is likely mechanical and related to his obesity. It has been recommended that the claimant lose weight in order to treat his symptoms." Tr. 84. ALJ Nelson continues: "The claimant's treating physicians have noted that the claimant's morbid obesity has likely contributed to his low back pain and foot pain, and have advised him to lose weight." Tr. 84. ALJ Nelson also noted that, despite his impairments, Barrows "retains the [RFC] for the range of light and unskilled work described [in the opinion]." Tr. 87.

1686821, *10.  The record was sufficiently developed for the ALJ to make a physical RFC determination.  The record consisted of the following evidence: (1) Barrows's subjective statements about his capabilities and limitations; (2) medical records of his examinations and tests; (3) observations by a consultative psychologist (Dr. Morton), several doctors (*e.g.*, Dr. Desai, Dr. Fran, Dr. Nyunt, Dr. Gee, and Dr. Singh), and a physical therapist (Joleen Stout); (4) a VE's testimony (Warren Higginson);[39] (5) opinions by four non-treating, non-examining medical experts (*i.e.*, Dr. Gernes, Dr. May, Dr. Lark, and Dr. Tashner); (6) Barrows's daily living activities and work experience; (7) testimony at the ALJ's hearing; and (8) other medical evidence given less weight, such as the opinions of Nurse Practitioner Sharon Eckhart and Dr. Heather Einck, a chiropractor, and Ms. Carrie Benson's statements.  *See Pearsall*, 274 F.3d at 1218 (citing 20 C.F.R. §§ 404.1545(a), 404.1546).

I find that the ALJ's physical RFC determination is supported by substantial evidence in the record, and "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."  *See Hattig*, 2013 WL 6511866, *11 (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).  Based on Barrows's "age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 22.  Remand is unnecessary as Barrows has not shown that he "was prejudiced or treated unfairly by how the ALJ did or did not develop the record."  *Onstad*, 999 F.2d at 1234 (citing *Phelan*, 846 F.2d at 481.)

---

[39] At the ALJ's hearing the VE testified to whether a hypothetical person, with the same age; past work; educational level; and credible impairments as Barrows, could work. The VE testified that such a person could perform the work of "a small parts assembler" and "a hand packager."  Tr. 71–72.

## VII.   CONCLUSION

For the foregoing reasons, I adopt in part and reject in part Judge Strand's R & R.  The ALJ did not abdicate his duty to develop the record.  Nor did the ALJ err in relying on the opinions of non-treating, non-examining sources because the ALJ considered those opinions along with the other medical evidence of record.  *See Casey*, 503 F.3d at 694.  Barrows does not meet the statutory definition of "disability," which requires Barrows's "inability to engage in any substantial gainful activity" to last, or be expected to last, for at least 12 months.  *See Barnhart v. Walton*, 535 U.S. 212, 225 (2002) (upholding Social Security Administration's interpretation of statutory definition of "disability" under 42 U.S.C. § 423(d)(1)(A)).  Rather, substantial evidence in the record supports the ALJ's physical RFC determination that Barrows is able to work, despite his impairments, and he will be able to adjust to other work existing in substantial numbers in the economy.  Accordingly, I affirm the ALJ's decision that Barrows has a physical RFC to perform work at a light exertional level, and Barrows is not disabled. The Clerk shall enter judgment in favor of the Commissioner and against Barrows.

**IT IS SO ORDERED.**

**DATED** this 31st day March, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA